IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RAMAR WALTON,

    **Plaintiff,**

    v.                                                                          CASE NO. 24-3115-JWL

UNIFIED GOVERNMENT OF
WYANDOTTE COUNTY, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this pro se civil rights action pursuant to 42 U.S.C. § 1983. At the time of filing, Plaintiff was detained at the Wyandotte County Detention Center in Kansas City, Kansas. Plaintiff is currently incarcerated at the Lansing Correctional Facility in Lansing, Kansas. The Court entered a Memorandum and Order to Show Cause (Doc. 2) ("MOSC") ordering Plaintiff to show good cause why his Complaint should not be dismissed or to file an amended complaint to cure the deficiencies noted in the MOSC. Plaintiff has filed an Amended Complaint (Doc. 7). The Court's screening standards are set forth in the Court's MOSC.

**I. Nature of the Matter Before the Court**

Plaintiff alleges "several repeated instances of excessive force" by the Kansas City, Kansas Police Department ("KCKPD") and its failure to initiate investigations into the conduct of its officers and law enforcement agency. (Doc. 7, at 2.) Plaintiff alleges that on August 3, 2022, he was at a gas station getting ready to get gas when an SUV pulled in front of his car. Plaintiff alleges that he backed up and was approached by Officer Potter, who busted the passenger side window, opened the door, and started assaulting Plaintiff with his baton without telling Plaintiff what he had done wrong. *Id.* at 3. Plaintiff alleges that Officer Erickson

snatched the drivers-side door open and assaulted Plaintiff with his baton even though Plaintiff was not a threat. *Id*.

Plaintiff attaches a handwritten complaint in which he alleges that he was struck with the officers' batons at least 30 times, and that the officers approached him at night in a dangerous neighborhood without identifying themselves or directing Plaintiff to "stay put." (Doc. 7–1, at 5, 7.) Plaintiff alleges that the incident is captured on bodycam video 2-062387, and that when Officer Erickson was asked what happened, he responded that "we beat his ass." *Id*. at 8. Plaintiff also asserts that the policymakers were on notice because there has been a minimum of 136 instances of excessive force/misconduct by KCKPD. *Id*. at 9. Plaintiff alleges that he was injured and taken to the hospital following the incident. *Id*. 16.

Plaintiff states that he filed a complaint with internal affairs. *Id*. at 17. He received a letter from the Chief of Police stating that a violation of their rules and regulations did occur. *Id*. at 17, 42.

Plaintiff alleges excessive force as Count I, and a failure to train/Monell liability as Count II. *Id*. As Count III, Plaintiff alleges a failure to intervene, claiming that Officers Potter and Erickson took turns beating Plaintiff and failed to intervene. (Doc. 7, at 4.)

Plaintiff names as defendants: the Unified Government of Wyandotte County;[1] the Board of County Commissioners of Wyandotte County, Kansas; KCKPD Officer Hayden Erickson; KCKPD Officer Drew Potter; and KCKPD Chief of Police Karl Oakman. Plaintiff seeks compensatory and punitive damages. *Id*. at 5.

---

[1] The governments of Wyandotte County and Kansas City, Kansas, were consolidated to form the Unified Government of Wyandotte County and Kansas City, Kansas ("UG"). The KCKPD operates as part of the UG and directly reports to the County Administrator. *See* https://www.kckpd.org/Department/History (last visited Nov. 13, 2024).

## II. Discussion

### A. Excessive Force

"Excessive force claims are cognizable under the Fourth, Fifth, Eighth, and Fourteenth Amendment, depending on where in the criminal justice system the plaintiff is at the time of the challenged use of force." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021) (citation omitted). "When an 'excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment.'" *Id*. (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)).

"To state an excessive force claim under the Fourth Amendment, plaintiffs must show *both* that a seizure occurred and that the seizure was unreasonable." *Id.* (quoting *Bond v. City of Tahlequah*, 981 F.3d 808, 815 (10th Cir. 2020) (emphasis in original) (quotation marks omitted)). In assessing reasonableness, a court "looks at the facts and circumstances as they existed at the moment the force was used, while also taking into consideration the events leading up to that moment." *Id*. (quoting *Emmett v. Armstrong*, 973 F.3d 1127, 1135 (10th Cir. 2020)). The inquiry is an objective one, and one that considers the totality of the circumstances. *Id*. (citation omitted). Reasonableness is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. (quoting *Graham*, 490 U.S. at 396). "The right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion . . . to effect it." *Edwards v. City of Muskogee, Oklahoma*, 841 F. App'x 79, 83 (10th Cir. 2021) (unpublished) (quoting *Lundstrom v. Romero*, 616 F.3d 1108, 1126 (10th Cir. 2010) (internal quotation marks omitted)). "Reasonableness does not require that officers use alternative or less intrusive means if the conduct is otherwise reasonable." *Arnold v. City of*

*Olathe, Kansas*, Case No. 2:18-cv-02703-HLT, 2021 WL 3129408, at *8 (D. Kan. July 23, 2021) (citation omitted).

The Supreme Court in *Graham* outlined three factors that guide the reasonableness analysis: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Vette*, 989 F.3d at 1169 (quoting *Graham*, 490 U.S. at 396). In evaluating the third factor, a court considers "whether the plaintiff was fleeing or actively resisting at the 'precise moment' the officer employed the challenged use of force." *Id*. (citation omitted). The Tenth Circuit has also held that "initial resistance does not justify the continuation of force once the resistance ceases." *McCoy v. Meyers*, 887 F.3d 1034, 1051 (10th Cir. 2018) (citations omitted).

### B. Heck Bar

If Plaintiff's claim in this case would necessarily imply the invalidity of his conviction, the claim may be barred by *Heck*. *See Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck v. Humphrey*, the United States Supreme Court held that when a state prisoner seeks damages in a § 1983 action, the district court must consider the following:

> whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id*. at 487. In *Heck*, the Supreme Court held that a § 1983 damages claim that necessarily implicates the validity of the plaintiff's conviction or sentence is not cognizable unless and until the conviction or sentence is overturned, either on appeal, in a collateral proceeding, or by executive order. *Id*. at 486–87.

The Court noted in the MOSC that an online Kansas District Court Records Search indicates that based on offenses occurring on August 3, 2022, Plaintiff was charged with: 1) Aggravated Assault of LEO; Use of a deadly weapon; 2) Interference with LEO; obstruct/resist/oppose felony warrant service or execution; and 3) Theft of property or services; Value less than $1,500. *See State v. Walton*, Case No. 2022-CR-000812 (Wyandotte County District Court). The docket reflects that on April 14, 2023, the charge of aggravated assault of LEO was dismissed and Plaintiff pleaded guilty to the other two charges.[2] Plaintiff has not alleged that the conviction or sentence has been invalidated.

The Court found in the MOSC that it is possible that Plaintiff's excessive force claim may not be barred by *Heck*, depending on the facts surrounding his arrest. "An excessive-force claim against an officer is not necessarily inconsistent with a conviction for assaulting the officer." *Torres v. Madrid*, 60 F.4th 596, 600 (10th Cir. 2023) (citing *Havens v. Johnson*, 783 F.3d 776, 782 (10th Cir. 2015)). "For example, the claim may be that the officer used too much force to respond to the assault or that the officer used force after the need for force had disappeared." *Id.* "[I]n cases where there are multiple uses of force or a continuing use of force, *Heck* may bar the plaintiff's claims as to some force but not all." *Id*. at 600–01 (citing *Hooks v. Atoki*, 983 F.3d 1193, 1197, 1201 (10th Cir. 2020) (although *Heck* barred plaintiff, who had pleaded no contest to two counts of assault and battery on a police officer, from bringing excessive-force claims based on four uses of force involved in subduing him, "[t]he fifth and sixth uses of force [we]re different" and thus not barred by *Heck* because plaintiff had alleged that he "no longer posed a threat")).

In *Torres*, the Tenth Circuit reversed the decision finding plaintiff's claims were barred

---

[2] The Court notes that the docket and the Journal Entry of Judgment reflect a guilty plea, while the plea agreement has "guilty" crossed out and "no contest" interlineated.


by *Heck* as inconsistent with plaintiff's no-contest pleas to charges of aggravated flight from a law-enforcement officer and assault upon a peace officer "because her pleas are not inconsistent with her claims that the officers used excessive force by firing at her after she had driven past them and no longer posed a threat to them." *Id*. at 599–600.  "The analysis of whether *Heck* bars the entirety of a plaintiff's excessive-force claims thus requires 'compar[ing] the plaintiff's allegations to the offense [s]he committed." *Id*. at 601 (citing *Havens*, 783 F.3d at 782).

The Court cannot determine whether Plaintiff states a valid excessive force claim or whether or not such a claim may be barred by *Heck* based on his state court criminal conviction. The Court finds that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate KCKPD officials.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991).  Accordingly, the Court orders the appropriate KCKPD officials to prepare and file a *Martinez* Report.  Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A.

Plaintiff references a bodycam video in his Amended Complaint.  He also previously filed a motion (Doc. 5) seeking to submit video footage as evidence.  The KCKPD officials should include this video in the report.

Plaintiff attaches medical records to his Amended Complaint.  Because the document at page 27 of Doc. 7–1 appears to be the medical record of someone other than Plaintiff, the Court will direct the Clerk to redact any identifying information from this page.  The Court also directs the Clerk to redact Plaintiff's date of birth from pages 19–41 of Doc. 7–1.

**IT IS THEREFORE ORDERED BY THE COURT** that the Clerk is directed to redact any identifying information from the document at page 27 of Doc. 7–1.  The Clerk is also

directed to redact Plaintiff's date of birth from pages 19–41 of Doc. 7–1.

**IT IS FURTHER ORDERED** that**:**

(1) The KCKPD officials shall submit the *Martinez* Report by **December 20, 2024**. Upon the filing of that Report, the Court will screen Plaintiff's Amended Complaint. If the Amended Complaint survives screening, the Court will enter a separate order for effecting service on defendants.

(2) KCKPD officials are directed to undertake a review of the subject matter of the Amended Complaint:

a. To ascertain the facts and circumstances;

b. To consider whether any action can and should be taken to resolve the subject matter of the Amended Complaint; and

c. To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Amended Complaint and should be considered together.

(3) Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff. If the KCKPD officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s). The KCKPD officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(4) Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the

reports of medical or psychiatric examinations shall be included in the written report.  Any recordings related to Plaintiff's claims shall also be included.

(5) Authorization is granted to the KCKPD officials to interview all witnesses having knowledge of the facts, including Plaintiff.

(6) No motion addressed to the Amended Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(7) Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the Amended Complaint.  This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter KCKPD Chief of Police Karl Oakman as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein.

Copies of this order shall be transmitted to Plaintiff, to the KCKPD Chief of Police, and to the District Attorney for the United Government of Wyandotte County/Kansas City, Kansas.

**IT IS SO ORDERED**.

Dated November 14, 2024, in Kansas City, Kansas.

                    **S/ John W. Lungstrum**
                    **JOHN W. LUNGSTRUM**
                    **UNITED STATES DISTRICT JUDGE**