IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RAMAR WALTON,

       **Plaintiff,**

      v.                                       CASE NO. 24-3115-JWL

UNIFIED GOVERNMENT OF
WYANDOTTE COUNTY, et al.,

       **Defendants.**

**MEMORANDUM AND ORDER**

Plaintiff brings this pro se civil rights action pursuant to 42 U.S.C. § 1983. At the time of filing, Plaintiff was detained at the Wyandotte County Detention Center in Kansas City, Kansas. Plaintiff is currently incarcerated at the Lansing Correctional Facility in Lansing, Kansas. On November 14, 2024, the Court entered a Memorandum and Order (Doc. 9) ("M&O") finding that the proper processing of Plaintiff's claims could not be achieved without additional information, and directing KCKPD officials to submit a *Martinez* Report. The M&O provides that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A." (Doc. 9, at 6.) The *Martinez* Report (Doc. 15) (the "Report") has now been filed. The Court's screening standards are set forth in detail in the Court's Memorandum and Order to Show Cause at Doc. 2.

**I. Nature of the Matter Before the Court**

Plaintiff alleges "several repeated instances of excessive force" by the Kansas City, Kansas Police Department ("KCKPD") and its failure to initiate investigations into the conduct of its officers and law enforcement agency. (Doc. 7, at 2.) Plaintiff alleges that on August 3,

1

2022, he was at a gas station getting ready to get gas when an SUV pulled in front of his car. Plaintiff alleges that he backed up and was approached by Officer Potter, who busted the passenger side window, opened the door, and started assaulting Plaintiff with his baton without telling Plaintiff what he had done wrong. *Id*. at 3. Plaintiff alleges that Officer Erickson snatched the drivers-side door open and assaulted Plaintiff with his baton even though Plaintiff was not a threat. *Id*.

Plaintiff attaches a handwritten complaint in which he alleges that he was struck with the officers' batons at least 30 times, and that the officers approached him at night in a dangerous neighborhood without identifying themselves or directing Plaintiff to "stay put." (Doc. 7–1, at 5, 7.) Plaintiff alleges that the incident is captured on bodycam video 2-062387, and that when Officer Erickson was asked what happened, he responded that "we beat his ass." *Id*. at 8. Plaintiff also asserts that the policymakers were on notice because there has been a minimum of 136 instances of excessive force/misconduct by KCKPD. *Id*. at 9. Plaintiff alleges that he was injured and taken to the hospital following the incident. *Id*. 16.

Plaintiff states that he filed a complaint with internal affairs. *Id*. at 17. He received a letter from the Chief of Police stating that a violation of their rules and regulations did occur. *Id*. at 17, 42.

Plaintiff alleges excessive force as Count I, and a failure to train/Monell liability as Count II. *Id*. As Count III, Plaintiff alleges a failure to intervene, claiming that Officers Potter and Erickson took turns beating Plaintiff and failed to intervene. (Doc. 7, at 4.)

Plaintiff names as defendants: the Unified Government of Wyandotte County;[1] the Board

---

[1] The governments of Wyandotte County and Kansas City, Kansas, were consolidated to form the Unified Government of Wyandotte County and Kansas City, Kansas ("UG"). The KCKPD operates as part of the UG and directly reports to the County Administrator. *See* https://www.kckpd.org/Department/History (last visited Nov. 13, 2024).

of County Commissioners of Wyandotte County, Kansas; KCKPD Officer Hayden Erickson; KCKPD Officer Drew Potter; and KCKPD Chief of Police Karl Oakman. Plaintiff seeks compensatory and punitive damages. *Id*. at 5.

## II. The Report

The Report provides that the incident that is the subject of Plaintiff's claims involved Plaintiff's apprehension and arrest for theft of a motor vehicle. (Doc. 15, at 1.) Plaintiff entered a plea of "no contest" and was sentenced to prison. *Id*. The Report provides in detail:

> 1. On August 3, 2022, Kansas City, Kansas Police Officers Drew Potter and Hayden Erickson were on patrol when they recognized a red 1996 Honda Civic that had recently been involved in several failure to yield incidents at the 7-Eleven gas station and convenience store located at 2500 Central Avenue, Kansas City, Kansas. (Exhibit A, Police Report at 1, 12-15)
> 2. The vehicle was also known to be stolen and have a stolen license plate. (Exhibit A at 13 and 15)
> 3. Plaintiff Walton's vehicle was reversing from a parking spot in front of the convenience store as the patrol vehicle entered the parking lot. (Exhibit B, Dashcam video from Potter and Erickson's patrol vehicle)
> 4. Walton's vehicle paused briefly, possibly from a stall out of the manual transmission, as the patrol vehicle approached from the rear. Officer Erickson can be heard yelling "stall out" as he exited the patrol vehicle to approach Walton's car on foot. (Exhibit A at 13 and 15; Exhibit C, Erickson Body Worn Camera Video 1)
> 5. As Erickson ran toward [ ] Walton's vehicle and ordered him to "get out of the car," Walton got his vehicle in gear and drove forward, angling to his left, away from the patrol vehicle and toward the gas pumps and the south exit of the parking lot. (Exhibit A at 15; Exhibits B and C)
> 6. Officer Potter drove the marked KCKPD patrol vehicle in front of Walton's vehicle, blocking a forward escape. (Exhibit A at 13 and 15; Exhibits B and C)
> 7. Walton braked to avoid a collision with the KCKPD patrol vehicle. (Exhibit C)
> 8. Immediately after parking the patrol vehicle, Officer Potter exited and approached Walton's vehicle from the front. Erickson can be heard again ordering Walton to "get out of the car!" (Exhibit A at 13 and 15; Exhibit C; Exhibit D, Potter Body Worn Camera Video)

9. Before ordering Walton out of the vehicle, Erickson noticed that his driver's side window was down and Walton was looking in his direction. (Exhibit A at 15)

10. Walton responded to the officers by rapidly reversing the vehicle toward Erickson and away from Potter, forcing Erickson, who was approaching from the rear on foot, to jump out of the way to avoid being hit. (Exhibit A at 13 and 16; Exhibits C and D)

11. After reversing the vehicle past the gas pumps, Walton turned the vehicle so he could drive forward, presumably to flee the scene from the northeast exit of the parking lot. (Exhibits C and D)

12. However, Walton was unable to put the manual transmission into the correct gear. The engine can be heard revving on the video from Officer Potter's bodycam. (Exhibit A at 13 and 16; Exhibit D)

13. Potter ran toward the vehicle and broke the passenger side window with his baton. Walton can be seen struggling with the manual transmission as the engine continues to rev. Erickson ordered Walton to exit the car. (Exhibit A at 13 and 16; Exhibits C and D)

14. Potter began utilizing baton strikes to Walton's right arm to prevent him from putting the vehicle in gear. (Exhibit A at 13 and 16; Exhibits C and D)

15. About six seconds later, Officer Erickson opened the driver's side door and again ordered Walton to "get out of the car!" (Exhibits C and D)

16. Walton continued trying to put the car in gear and rev the engine. (Exhibit A at 16; Exhibits C and D)

17. Walton began using his left leg to kick at Erickson even as he continued his efforts to get the car in gear and drive away. (Exhibit A at 13 and 16; Exhibits C and D)

18. Erickson also began to utilize baton strikes to prevent Walton from fleeing the scene. (Exhibit A at 16; Exhibit C)

19. Walton began shouting "police brutality, police brutality," acknowledging that Potter and Erickson were law enforcement officers. Meanwhile, Walton was still trying to put the car in gear and flee. (Exhibit A at 13 and 16; Exhibits C and D)

20. Erickson backed away from the driver side door and again ordered Walton to "get out of the car!" Walton responded by continuing his efforts to put the car in gear and flee. (Exhibits C and D)

21. Eventually, Potter circled around the car from the passenger side to the driver's side. (Exhibits C and D)

22. As Potter attempted to pull Walton from the vehicle, Walton was kicking his left leg at Potter. Potter employed baton strikes. (Exhibits C and D)

23. At this point another marked KCKPD patrol vehicle with its

flashing lights on, drove in front of Walton's car, blocking his escape. Erickson announced that the "car is surrounded." (Exhibits C and D)

24. After this point, there are no further baton strikes. (Exhibits C, D and E, Continuing Video from Erickson Body Worn Camera Video 2)

25. As Potter backed away, Walton again attempted to flee the scene, putting the vehicle in gear and revving the engine. (Exhibit A at 16; Exhibits C and D)

26. Once again, Erickson ordered Walton to "get out of the car!" (Exhibits C and D)

27. As Walton was distracted by the approach of a third officer on the passenger side, Erickson grabbed Walton and attempted to wrestle him out of the vehicle. (Exhibits C and D)

28. As they grappled, Walton continued trying to put the car in gear and drive away. (Exhibits C and D)

29. After struggling for approximately seven seconds, Walton is finally pulled out of the vehicle and placed in cuffs. (Exhibits C, D and E)

30. Although Walton complained that his arm was broken in the altercation, x-rays at the University of Kansas Hospital did not find any fracture or dislocation. (Plaintiff's Amended Complaint, Doc. 7-2 at 22)

31. At Walton's request, the KCKPD internally reviewed the actions of Potter and Erickson. Captain Webb reviewed available videos and determined there was no use of excessive force, but he found the officers should not have engaged in conversation with Walton after he was removed from the vehicle until all parties had calmed down and other officers were on the scene. (Exhibit F)

32. The police report, dashcam video, body cam videos, and November 20, 2022, memorandum reviewing the arrest are true and accurate representations of the events depicted therein at the time they occurred and they were created in the normal course of business of the Kansas City, Kansas Police Department. (Affidavit of Drew Potter, Affidavit of Hayden Erickson, Affidavit of Carl Webb, Exhibits G-I, respectively)

33. On August 5, 2022, the District Attorney filed an Information in the District Court of Wyandotte County, Kansas, charging Walton with aggravated assault on a law enforcement officer, interference with law enforcement, and theft. A warrant for [Walton's][2] arrest, which had been issued by a Wyandotte County District Court Judge, was filed with the Information. (Exhibit J, Information and Warrant, Case No. 22-CR-000812)

34. On April 14, 2023, Walton entered a plea of no contest to the

---

[2] The Report inadvertently references "Jones's" arrest. Exhibit J is the Information and arrest warrant for Plaintiff Walton.

5

> charges of interference with a law enforcement officer (Severity Level 9 Non-Person Felony) and theft (Class A misdemeanor). (Exhibit K, Kansas Sentencing Guidelines Journal Entry of Judgment, Case No. 22-CR-00812)
> 35. A Wyandotte County District Court Judge sentenced Walton to a prison term of 24 months. (Exhibit L, Kansas Sentencing Guidelines Journal Entry of Judgment, Amended Journal Entry of Judgment, and Second Amended Journal Entry of Judgment, Case No. 2022-CR-000812)
> 36. On July 8, 2024, Walton filed his complaint, followed by an amended complaint on October 3, 2024.

(Doc. 15, at 2–6.) The Report further provides that Plaintiff's guilty plea to interference with a law enforcement officer and misdemeanor theft are incompatible with Plaintiff's Complaint. The Report states that "viewed objectively, the officer's use of force was reasonable in light of Walton's attempts to flee and resist arrest" and the use of batons "ended when Walton's vehicle was blocked." *Id*. at 6.

Captain Webb, who conducted the internal investigation, states in his affidavit that Plaintiff's "allegations of excessive force were not supported by the audio and video of [his] arrest and were therefore deemed not sustained and unfounded." (Doc. 15–9, at 3.)

## III. Discussion

"Excessive force claims are cognizable under the Fourth, Fifth, Eighth, and Fourteenth Amendment, depending on where in the criminal justice system the plaintiff is at the time of the challenged use of force." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021) (citation omitted). "When an 'excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment.'" *Id*. (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)).

"To state an excessive force claim under the Fourth Amendment, plaintiffs must show *both* that a seizure occurred and that the seizure was unreasonable." *Id.* (quoting *Bond v. City of Tahlequah*, 981 F.3d 808, 815 (10th Cir. 2020) (emphasis in original) (quotation marks omitted)).  In assessing reasonableness, a court "looks at the facts and circumstances as they existed at the moment the force was used, while also taking into consideration the events leading up to that moment." *Id*. (quoting *Emmett v. Armstrong*, 973 F.3d 1127, 1135 (10th Cir. 2020)).  The inquiry is an objective one, and one that considers the totality of the circumstances.  *Id*. (citation omitted).  Reasonableness is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. (quoting *Graham*, 490 U.S. at 396).  "The right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion . . . to effect it."  *Edwards v. City of Muskogee, Oklahoma*, 841 F. App'x 79, 83 (10th Cir. 2021) (unpublished) (quoting *Lundstrom v. Romero*, 616 F.3d 1108, 1126 (10th Cir. 2010) (internal quotation marks omitted)).  "Reasonableness does not require that officers use alternative or less intrusive means if the conduct is otherwise reasonable." *Arnold v. City of Olathe, Kansas*, Case No. 2:18-cv-02703-HLT, 2021 WL 3129408, at *8 (D. Kan. July 23, 2021) (citation omitted).

The Supreme Court in *Graham* outlined three factors that guide the reasonableness analysis: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Vette*, 989 F.3d at 1169 (quoting *Graham*, 490 U.S. at 396). In evaluating the third factor, a court considers "whether the plaintiff was fleeing or actively resisting at the 'precise moment' the officer employed the challenged use of force." *Id*. (citation omitted).  The Tenth Circuit has also held that "initial resistance does not justify the continuation

of force once the resistance ceases." *McCoy v. Meyers*, 887 F.3d 1034, 1051 (10th Cir. 2018) (citations omitted).

The Court has viewed the body camera videos and dashcam video submitted as exhibits to the Report, and finds that the Report accurately describes the incident as captured on the videos.  Considering the *Graham* factors, the Report shows that Plaintiff was in a stolen vehicle, Plaintiff posed a threat by revving the engine in an attempt to move the vehicle, and Plaintiff was actively resisting arrest or attempting to evade arrest by flight.  Plaintiff was fleeing or actively resisting at the precise moment the officers employed the challenged use of force, and the force ceased once the resistance ceased.

Plaintiff alleged in his Complaint that an SUV pulled in front of his car and officers approached him at night in a dangerous neighborhood without identifying themselves or directing Plaintiff to "stay put."  However, the video shows that the officers blocked Plaintiff in a marked KCKPD patrol vehicle, the officers were in police uniforms, and Plaintiff yelled "police brutality" multiple times while he was being ordered to exit the vehicle.

Plaintiff pled no contest to interference with a law enforcement officer (Severity Level 9 Non-Person Felony) and theft (Class A misdemeanor).  The Court found in the M&O that it is possible that Plaintiff's excessive force claim may not be barred by *Heck*, depending on the facts surrounding his arrest.  "An excessive-force claim against an officer is not necessarily inconsistent with a conviction for assaulting the officer." *Torres v. Madrid*, 60 F.4th 596, 600 (10th Cir. 2023) (citing *Havens v. Johnson*, 783 F.3d 776, 782 (10th Cir. 2015)).  "For example, the claim may be that the officer used too much force to respond to the assault or that the officer used force after the need for force had disappeared." *Id.*  "[I]n cases where there are multiple uses of force or a continuing use of force, *Heck* may bar the plaintiff's claims as to some force

but not all." *Id*. at 600–01 (citing *Hooks v. Atoki*, 983 F.3d 1193, 1197, 1201 (10th Cir. 2020) (although *Heck* barred plaintiff, who had pleaded no contest to two counts of assault and battery on a police officer, from bringing excessive-force claims based on four uses of force involved in subduing him, "[t]he fifth and sixth uses of force [we]re different" and thus not barred by *Heck* because plaintiff had alleged that he "no longer posed a threat")).

In *Torres*, the Tenth Circuit reversed the decision finding plaintiff's claims were barred by *Heck* as inconsistent with plaintiff's no-contest pleas to charges of aggravated flight from a law-enforcement officer and assault upon a peace officer "because her pleas are not inconsistent with her claims that the officers used excessive force by firing at her after she had driven past them and no longer posed a threat to them." *Id*. at 599–600. "The analysis of whether *Heck* bars the entirety of a plaintiff's excessive-force claims thus requires 'compar[ing] the plaintiff's allegations to the offense [s]he committed." *Id*. at 601 (citing *Havens*, 783 F.3d at 782).

In this case, Plaintiff alleges that officers used excessive force when they used baton strikes in an attempt to remove him from the stolen car. Plaintiff was charged with interference with a law enforcement officer. Noting in the Report or videos shows that force was used after Plaintiff was restrained. Plaintiff's excessive force claim is subject to dismissal.

Plaintiff's claims regarding failure to intervene and failure to train are also subject to dismissal. "Because there is no . . . excessive force, plaintiff's failure to intervene claim fails as a matter of law and the court does not analyze it." *Dale v. Harris*, 2014 WL 1414313, at n.3 (D. Kan. 2014) (citing *See Wallin v. Dycus,* 381 F. App'x 819, 823 (10th Cir. 2010) ("[A] law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983.") (quotation and quotation marks omitted); *Atkins v. Cnty. of Orange,* 372 F.Supp.2d 377, 407 (S.D.N.Y. 2005) (finding that a plaintiff's failure to

establish any constitutional violations based on excessive force precluded a failure to intervene claim)); *see also Turner v. City of Champaign*, 979 F.3d 563. 571 (7th Cir. 2020) (finding "if there is no excessive force then there can be no failure to intervene" and "[w]ithout evidence of a constitutional violation, the district court also properly granted summary judgment on the estate's *Monell* claim against the City of Champaign" ) (citations omitted); *Gonzales v. Adson*, 2019 WL 1795937, at *10 (N.D. Okla. 2019) ("If no excessive force was used, [the officer] cannot be held liable for failing to intervene.") (citing *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015) ("[w]e are unaware of any failure to intervene case in which this court has reversed either a grant of summary judgment or qualified immunity to a government actor without first finding a genuine issue of material fact as to an underlying constitutional violation.")).

The failure to state a claim of excessive force is also fatal to Plaintiff's failure to train claim. "A municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Harmon v. City of Norman, Oklahoma*, 61 F.4th 779, 794 (10th Cir. 2023) (citation omitted); *see also Horton v. Pobjecky*, 2017 WL 5899694, at *8 (N.D. Ill. 2017) ("Therefore, since this court finds that no excessive force occurred or, in the alternative, that Pobjecky is entitled to qualified immunity, there is no underlying constitutional violation and Sheriff Caruana and thereby Winnebago County cannot be liable under Monell."); *Kinghorn v. City of Idaho Falls*, 2015 WL 6697270, at *5 (D. Idaho 2015) ("Because Kinghorn's arrest and imprisonment were proper, and no excessive force was used on him, his claims challenging the City's policies (under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 708 (1978)) or lack of supervision and training (under *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)) must be dismissed.").

Based on the Report, the Court is considering dismissal of Plaintiff's claims. However,

the Court will grant Plaintiff an opportunity to respond to the Report and to show good cause why his claims should not be dismissed for failure to state a claim.

## IV. Response Required

The *Martinez* report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). The report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)). Thus, at this point in the proceedings the Court does not use the Report to resolve conflicts of fact. *See Swoboda v. Duback*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look to the Martinez report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes."). However, the Tenth Circuit has held that "[w]here the video evidence blatantly contradicts a material fact allegation, we may disregard that allegation in favor of what is actually depicted on the video." *Blake v. Wallace*, 2024 WL 5087805, at *2 (10th Cir. Dec. 12, 2024) (unpublished) (citation omitted). In light of the Report, the Court is considering dismissal of this matter for failure to state a claim.

Plaintiff will be given an opportunity to respond to the Report and to show good cause why dismissal should not be entered. Failure to respond by the Court's deadline may result in dismissal of this action without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **April 4, 2025,** in which to respond to the Report at Doc. 15, and to show good cause, in writing to the undersigned, why Plaintiff's claims should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

**Dated March 4, 2025, in Kansas City, Kansas.**

                                        **S/  John W. Lungstrum**
                                        **JOHN W. LUNGSTRUM**
                                        **UNITED STATES DISTRICT JUDGE**