IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RAMAR WALTON,

       **Plaintiff,**

       v.                                                          CASE NO. 24-3115-JWL

**UNIFIED GOVERNMENT OF**
**WYANDOTTE COUNTY, et al.,**

       **Defendants.**

### MEMORANDUM AND ORDER

Plaintiff brings this pro se civil rights action pursuant to 42 U.S.C. § 1983. At the time of filing, Plaintiff was detained at the Wyandotte County Detention Center in Kansas City, Kansas. On November 14, 2024, the Court entered a Memorandum and Order (Doc. 9) ("M&O") finding that the proper processing of Plaintiff's claims could not be achieved without additional information, and directing KCKPD officials to submit a *Martinez* Report. The *Martinez* Report (Doc. 15) (the "Report") was filed, and on March 4, 2025, the Court entered a Memorandum and Order (Doc. 19) ("M&O II") granting Plaintiff until April 4, 2025, in which to respond to the Report and to show good cause why his claims should not be dismissed. Plaintiff has failed to respond by the Court's deadline.

Plaintiff's factual allegations are set forth in detail in the M&O and M&O II. In summary, Plaintiff alleges that Officers Erickson and Potter with the Kansas City, Kansas Police Department ("KCKPD") used excessive force when they arrested him on August 3, 2022. Plaintiff names as defendants: the Unified Government of Wyandotte County;[1] the Board of

---

[1] The governments of Wyandotte County and Kansas City, Kansas, were consolidated to form the Unified Government of Wyandotte County and Kansas City, Kansas ("UG"). The KCKPD operates as part of the UG and directly reports to the County Administrator. *See* https://www.kckpd.org/Department/History (last visited Nov. 13, 2024).

1

County Commissioners of Wyandotte County, Kansas; KCKPD Officer Hayden Erickson; KCKPD Officer Drew Potter; and KCKPD Chief of Police Karl Oakman.  Plaintiff seeks compensatory and punitive damages.  *Id*. at 5.

The Report provides that the incident that is the subject of Plaintiff's claims involved Plaintiff's apprehension and arrest for theft of a motor vehicle.  (Doc. 15, at 1.)  Plaintiff entered a plea of "no contest" and was sentenced to prison.  *Id*.  The Report further provides that Plaintiff's guilty plea to interference with a law enforcement officer and misdemeanor theft are incompatible with Plaintiff's Complaint.  The Report states that "viewed objectively, the officer's use of force was reasonable in light of Walton's attempts to flee and resist arrest" and the use of batons "ended when Walton's vehicle was blocked."  *Id*. at 6.  Captain Webb, who conducted the internal investigation, states in his affidavit that Plaintiff's "allegations of excessive force were not supported by the audio and video of [his] arrest and were therefore deemed not sustained and unfounded."  (Doc. 15–9, at 3.)

The Court viewed the body camera videos and dashcam video submitted as exhibits to the Report, and found in the M&O II that the Report accurately describes the incident as captured on the videos.  The Court found that considering the *Graham*[2] factors, the Report shows that Plaintiff was in a stolen vehicle, Plaintiff posed a threat by revving the engine in an attempt to move the vehicle, and Plaintiff was actively resisting arrest or attempting to evade arrest by flight.  Plaintiff was fleeing or actively resisting at the precise moment the officers employed the challenged use of force, and the force ceased once the resistance ceased.

---

[2] The Supreme Court in *Graham* outlined three factors that guide the reasonableness analysis: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021) (quoting *Graham*, 490 U.S. at 396).  In evaluating the third factor, a court considers "whether the plaintiff was fleeing or actively resisting at the 'precise moment' the officer employed the challenged use of force." *Id*. (citation omitted). The Tenth Circuit has also held that "initial resistance does not justify the continuation of force once the resistance ceases." *McCoy v. Meyers*, 887 F.3d 1034, 1051 (10th Cir. 2018) (citations omitted).

The Court found that Plaintiff's excessive force claim is subject to dismissal, and therefore his claims regarding failure to intervene and failure to train are also subject to dismissal. "Because there is no . . . excessive force, plaintiff's failure to intervene claim fails as a matter of law and the court does not analyze it." *Dale v. Harris*, 2014 WL 1414313, at n.3 (D. Kan. 2014) (citations omitted). The failure to state a claim of excessive force is also fatal to Plaintiff's failure to train claim. "A municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Harmon v. City of Norman, Oklahoma*, 61 F.4th 779, 794 (10th Cir. 2023) (citation omitted).

The Court granted Plaintiff an opportunity to respond to the Report and to show good cause why dismissal should not be entered. The Court's M&O II provides that "[f]ailure to respond by the Court's deadline may result in dismissal of this action without further notice for failure to state a claim." (Doc. 19, at 11.) Plaintiff has failed to respond by the Court's deadline and has failed to show good cause why his claims should not be dismissed for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that this matter is **dismissed** for failure to state a claim.

**IT IS SO ORDERED**.

**Dated April 10, 2025, in Kansas City, Kansas.**

S/ John W. Lungstrum
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE
